**HADDONBROOK ASSOCIATES,**
Appellant

v.

**GENERAL ELECTRIC COMPANY.**

No. 10–1744.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
L.A.R. 34.1(a) March 10, 2011.

Filed: May 4, 2011.

Louis Cappelli, Jr., Esq., Cherry Hill, NJ, Dakar R. Ross, Esq., Franklinville, NJ, Paul H. Schneider, Esq., Giordano, Halleran & Ciesla, Red Bank, NJ, for Appellant.

Craig W. Davis, Esq., Arnold L. Natali, Jr., Esq., Cynthia Stencel Betz, Steven Howard Weisman, McCarter & English, Newark, NJ, for Appellee.

Before: SCIRICA, AMBRO and VANASKIE, Circuit Judges.

## OPINION

VANASKIE, Circuit Judge.

Haddonbrook Associates ("Haddonbrook") appeals from the District Court's order granting summary judgment in favor of General Electric Company ("GE") on the ground that this action is barred by the applicable statute of limitations. For the reasons that follow, we will affirm.[1]

I.

Because we write only for the parties, we assume their familiarity with the facts and procedural history, which we reference only as necessary to explain our decision.

In the 1970s, hazardous waste was discarded in a sanitary landfill located on two parcels of land in Voorhees Township, New Jersey, polluting the surrounding environment. GE owns one of the lots on which the landfill was operated; Voorhees Township owns the other lot. Haddonbrook owns a parcel of land adjacent to Voorhees Township's lot.

In 1991, GE brought an action against the operator of the landfill and numerous other parties seeking to recover costs incurred in responding to the environmental contamination at the former landfill site. In 1994, Plantation Homes, Inc. ("Plantation"), Haddonbrook's predecessor in title, moved to intervene in GE's action.[2] Plantation's proposed complaint alleged that GE and Voorhees Township, in addition to the defendants in GE's action, illegally "disposed or permitted disposal of toxic and hazardous waste at [the landfill] site," resulting in the contamination of the surrounding environment and consequent "irreparable harm to [Plantation] in the use and enjoyment of its land." (J.A. 248–49.)

Like Haddonbrook's complaint in the instant action, Plantation's 1994 proposed intervenor complaint included claims for negligence and strict liability. Joseph Samost, who is a managing partner of Haddonbrook and was Plantation's president, submitted a certification in support of Plantation's motion to intervene in which he attested that he was aware of the facts set forth in the proposed complaint and

---

1. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

2. In 2000, Joseph Samost, Plantation's owner and president, conveyed the property to Haddonbrook, a partnership between Samost, his wife, and his daughter, for the consideration of $1.00.

that the complaint's allegations were true and accurate. On January 27, 1995, Plantation's motion to intervene was denied.

On November 14, 2007, approximately thirteen years after Haddonbrook's predecessor in title was denied leave to intervene in the GE cost recovery action, Haddonbrook initiated this action against GE in New Jersey Superior Court, which GE removed to the District Court. Haddonbrook alleges that as a result of the disposal of hazardous waste on GE's property and the contamination of Haddonbrook's property it "has been precluded from developing the Haddonbrook Property for any commercial and/or residential use, and from otherwise having, enjoying and receiving full use and value of its investment." (J.A. 272.) Haddonbrook asserts claims for negligence, strict liability, and nuisance.[3]

Because Samost attested to his knowledge of the facts set forth in Plantation's proposed intervenor complaint in 1994, and because Samost's knowledge is imputed to his partnership under N.J.S.A. 42:1A–3(f), the District Court concluded that Haddonbrook was aware of its claims against GE at least thirteen years before it filed suit. Rejecting Haddonbrook's argument that it had alleged "continuing torts," the District Court granted GE's motion for summary judgment on the ground that Haddonbrook's claims were barred by the six-year limitations period. *See* N.J.S.A. 2A:14–1. Haddonbrook argues that this was error.

## II.

Under the continuing tort doctrine, "although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period." *Thorndike v. Thorndike*, 154 N.H. 443, 910 A.2d 1224, 1227 (2006) (internal quotation marks omitted). In *Russo Farms, Inc. v. Vineland Board of Education*, 144 N.J. 84, 675 A.2d 1077 (1996), the New Jersey Supreme Court set forth the principles governing the doctrine's application. The court explained that the doctrine is "best understood in the context" of nuisance claims:

> When a court finds that a continuing nuisance has been committed, it implicitly holds that the defendant is committing a new tort, including a new breach of duty, each day, triggering a new statute of limitations. That new tort is an "alleged present failure" to remove the nuisance, and "[s]ince this failure occurs each day that [defendant] does not act, the [defendant's] alleged tortious inaction constitutes a continuous nuisance for which a cause of action accrues anew each day." Essentially, courts in those cases impose a duty on the defendant to remove the nuisance. Because the defendant has a duty to remove the nuisance, and because the defendant's failure to remove the nuisance is a breach of that duty, each injury is a new tort. The plaintiff is therefore able to collect damages for each injury suffered within the limitations period.

*Id.* at 1084 (citations omitted). Thus, under *Russo Farms*, a continuing tort must "contain[ ] every element of a tort, including a new breach of duty." *Id.* at 1087. Moreover, the *Russo Farms* court was explicit that "new injury" must result from "a new breach of duty." *Id.* at 1091; *see also Maslauskas v. United States*, 583 F.Supp. 349, 351 (D.Mass.1984) ("A continuing tort sufficient to toll the statute of limitations is occasioned by continual un-

---

**3.** A fourth claim for trespass was dismissed on GE's motion for partial summary judg-

ment. Haddonbrook does not appeal that decision.

lawful acts, not by continuing ill effects from an original tort.").

■ In determining that Haddonbrook had failed to allege a continuing nuisance, the District Court relied on the fact that Haddonbrook sought damages for the diminution in value of its property—a measure of damages generally associated with permanent and not continuing nuisances. *See Weinhold v. Wolff,* 555 N.W.2d 454, 465 (Iowa 1996); *Frank v. Envtl. Sanitation Mgmt., Inc.,* 687 S.W.2d 876, 883 (Mo. 1985). As the District Court astutely observed: "Recovery for value-diminution makes little sense in the context of continuing tort because if a nuisance can be abated (as it must to constitute a continuing tort), then the damage to appurtenant property is not permanent, and therefore a measure of damages that assumes permanent injury would be inappropriate." (J.A. 16–17.) In light of the "permanent" damages sought and the evidence establishing that the value of the property was completely destroyed well before the six-year period prior to Haddonbrook's suit, the District Court concluded that Haddonbrook failed to allege any "new injury" within the limitations period necessary to apply the continuing tort doctrine.

Haddonbrook argues that the District Court's decision ignores the evidence of the ongoing migration of contaminants from GE's property, which Haddonbrook argues establishes its "new injury" within the limitations period. While it is true that contaminants may continue to flow onto Haddonbrook's property, the District Court correctly concluded that Haddonbrook failed to claim or adduce evidence of any compensable injury occurring within the limitations period. *See Player v. Motiva Enters. LLC,* No. 02–3216, 2006 WL 166452, at *9 (D.N.J. Jan. 20, 2006) ("[T]he release of contaminants into the groundwater aquifer does not itself generate damages, unless Plaintiffs can show that they suffered harm."). We accordingly agree with the District Court that Haddonbrook failed to allege a continuing nuisance.

As to Haddonbrook's negligence claim, the District Court determined that Haddonbrook failed to allege any newly breached duty apart from the duty to abate the contamination that is alleged in the nuisance claim. Indeed, *Russo Farms* requires a "new" breach of duty, 675 A.2d at 1091, i.e., a breach of duty within the limitations period, and in the absence of any such allegation to support a claim distinct from the claim of nuisance, the District Court properly concluded that the negligence alleged was not a continuing tort.

■ Finally, the District Court determined that Haddonbrook failed to allege any conduct within the limitations period to support application of the continuing tort doctrine to its strict liability claim. In New Jersey, "those who use, or permit others to use, land for the conduct of abnormally dangerous activities are strictly liable for resultant damages." *State, Dep't of Envtl. Prot. v. Ventron Corp.,* 94 N.J. 473, 468 A.2d 150, 157 (1983). Thus, for its strict liability claim to qualify as a continuing tort, Haddonbrook was required to demonstrate that GE engaged in abnormally dangerous activity within the limitations period. Haddonbrook's argument that GE is strictly liable for the continuing flow of contaminants onto Haddonbrook's property does not make this requisite showing. The District Court therefore correctly concluded that Haddonbrook's strict liability claim was not a continuing tort.

### III.

As Haddonbrook's nuisance, negligence, and strict liability claims do not constitute continuing torts under *Russo Farms,* they

are barred by the statute of limitations. We will accordingly affirm the grant of summary judgment in favor of GE.